IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01391-SKC-KAS

ATX NETWORKS (TORONTO) CORP.

    Plaintiff,

v.

TECHNETIX, INC.

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion to Compel Plaintiff to Supplement its Infringement Contentions** [#47] (the "Motion"). Plaintiff filed a Response [#49] in opposition to the Motion [#47], and no reply briefs were permitted. On January 27, 2025, the Court held a discovery dispute hearing at which Defendant presented a slide deck of demonstratives. The Motion [#47] has been referred to the undersigned, *see* [#48]. The Court has reviewed the briefing, the parties' pre-discovery dispute hearing emails and submissions, the January 27, 2025 hearing transcript [#60][1], the entire case file, and the applicable law. For the following reasons, the Motion [#47] is **GRANTED**.

---

[1] Two versions of the January 27, 2025 hearing transcript have been filed on the docket, one by Patterson Transcription Company and one by AB Litigation Services, and both under restriction. *See Patterson Hearing Tr.* [#59]; *AB Hearing Tr.* [#60]. For consistency, in this Order, the Court will cite to the AB Hearing Transcript [#60].

I. Background

In this matter, Plaintiff sues Defendant for allegedly infringing its patent for a "Chockless Power Coupler", as described in U.S. Patent No. 8,149,070 (the '070 Patent). *See Am. Compl.* [#20] at 2, ¶ 8. The patent relates to "a multi tap device used in cable television systems to deliver audio, video, and data through a coaxial cable network to and from cable television subscribers." *Id.* at 3, ¶ 11. It does so "via multi tap boxes connected along a main coaxial line that redirect and route a small portion of the radio frequency signal—*i.e.*, 'tap'—to a cable television subscriber, while simultaneously allowing most of the radio frequency signal to continue along the main coaxial line to other multi tap boxes and subscribers." *Id.*, ¶ 12. However, use of more multi-tap boxes along a main line causes increased loss of signal, degrading the service quality of the signal delivered to subscribers. *Id.*, ¶ 13. As Plaintiff's counsel explained at the hearing, "what these devices generally do is . . . send a signal to your home in a way that doesn't flatten or reduce the signal so that we can have signal down the way." *See AB Hearing Tr.* [#60] at 5:23-6:1. Plaintiff contends that the OTTZ 1.8 GHz outdoor multitap product (the "Accused Product"), which Defendant allegedly makes, uses, sells, offers for sale, and/or imports, infringes the '070 patent. *Am. Compl.* [#20] at 3, ¶ 15. Plaintiff also alleges that Defendant makes, uses, sells, offers for sale, and/or imports other multitap products such as the XFO Faceplate-Only 1.8 GHz Upgrade Motorola Multitap product. *Id.* at 4, ¶ 18.

Claims 1, 13, and 21 of the '070 Patent cover a BALUN (as Defendant puts it, "a conventional adapter for converting signals that are 'balanced' to signals that are 'unbalanced'")[2] and the "method for tapping part of an RF signal from a combined RF and

---

[2] The Institute of Electrical and Electronics Engineers (IEEE) has defined the term "balun" similarly: "A passive device having distributed electrical constants to couple a balanced system

2

AC signal" using a BALUN. *See '070 Patent* [#20-1] at 26-28; *Motion* [#47] at 2[3]. As relevant here, the three claims recite two signals—a "first signal" with a frequency range of "up to 15 A and 50 to 60 Hz AC signal" and a "second signal" with a frequency range of "at least 5 MHz to 3000 MHz RF"—and define the length of the BALUN relative to the wavelength of those signals: "wherein the length of said BALUN is about ½ wavelength of the highest frequency of the frequency range of said second signal[.]" *'070 Patent* at 26-27 (Claim 1), 27 (Claim 13), 28 (Claim 21).

On November 7, 2024, Plaintiff disclosed infringement contentions. *See Motion* [#47] at 2; *Infringement Contentions* [#47-1]. Relative to these three claims, Plaintiff asserts that "upon information and belief" the Accused Product "includes a BALUN with a length that is about ½ wavelength of the highest frequency of the frequency range of said second signal" and provides a general equation for calculating wavelength before asserting that "the balun is a ferrite material, which will impact the values in this equation." *Infringement Contentions* [#47-1] at 10; *see also id.* at 24, 47. However, the Infringement Contentions [#47-1] do not specifically describe the length of the BALUN in the accused device. Instead, they say that "upon information and belief, [the length] may be [or "is"] between approximately 0.5 cm to 2.0 cm." *Id.* at 12, 26, 48. Plaintiff does not explain how the ferrite material affects the wavelength calculation. *Cf. AB Hearing Tr.* [#60] at 25:18-

---

or device to an unbalanced system or device. Note: the term is derived from balance to unbalance transformer." *United States v. RMS Elecs., Inc.*, 624 F.2d 1081, n.1 (C.C.P.A. 1980) (quoting IEEE Standard Dictionary of Electrical & Electronics Terms (2d ed.)).

[3] Page number citations refer to the numbering used by the Court's CM/ECF docketing system and not to the document's original numbering.

21 (arguing that the relevant infringement contention "doesn't state . . . what's the length of a particular structure, and why does that length meet the claim").

On December 10, 2024, in an email to the undersigned's Chambers, Defendant counsel raised a discovery dispute over the sufficiency of these infringement contentions. *See Minute Order* [#43] at 1. The Court set a discovery hearing and a briefing schedule in advance of the hearing. *Id.* In its opening brief, which was docketed as the current Motion [#47], Defendant argued that the Court should compel Plaintiff to supplement these infringement contentions because they are not specific and do not identify the structures alleged to infringe or otherwise articulate any basis for the alleged infringement. *See Motion* [#47] at 3-5. The Court heard oral argument from both sides at the January 27, 2025 hearing. *See AB Hearing Tr.* [#60] at 22:9-56:18.

## II. Legal Standard

Under D.C.COLO.LPtR 4(a),[4] a party claiming patent infringement "shall serve Infringement Contentions identifying with specificity each accused product or process (the 'Accused Instrumentality')." The party must also serve a claim chart for each Accused Instrumentality, which "shall be specific and shall contain . . . [i]dentification of the specific location of each limitation of the claim within the Accused Instrumentality[.]" D.C.COLO.LPtR 4(b)(2).

While "the Local Patent Rules governing patent contentions operate somewhat like initial disclosures under Rule 26 of the Federal Rules of Civil Procedure, the two sets of rules serve distinct purposes." *Well Master Corp. v. Flowco Prod. Sols., LLC*, No. 21-cv-

---

[4] Because few written decisions regarding the requirements of D.C.COLO.LPtR 4 exist, the Court accepts the parties' invitation to consider case law from other jurisdictions with similar rules. *See Motion* [#47] at 3-4; *Response* [#49] at 3.

4

02145-CMA-KAS, 2024 WL 1281450, at *3 (D. Colo. Mar. 26, 2024). Both sets of rules are intended to "equip a litigant with the information it needs to develop and support its claim(s)," but the Local Patent Rules go further: they "also force the parties to 'pin down' their litigation theories, thereby '*confining discovery and trial preparation* to information that is pertinent to th[ose] theories of the case.'" *Id.* (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006)) (emphasis and modifications in *Well Master*).

Preliminary contentions "supplement the notice pleading required of the complaint to focus the issues for discovery and trial." *Golden v. United States*, 156 Fed. Cl. 623, 627 (Fed. Cl. 2021) (citing *Iris Corp. Berhad v. United States*, No. 15-175C, 2019 WL 2317143, at *2 (Fed. Cl. May 8, 2019)). Thus, unlike with a complaint, "[a] plaintiff cannot satisfy its [claim chart] obligations with 'nothing more than a conclusion based "on information and belief" that something exists or occurs.'" *Tech. Props. Ltd. LLC v. Samsung Elecs. Co.*, 114 F. Supp. 3d 842, 845 (N.D. Cal. 2015). "References to components merely 'capable of operating in a manner that infringes' do not suffice to identify which component meets the claim limitation and functions as claimed." *Power Density Sols, LLC v. U.S.*, No. 21-911C, 2023 WL 2624386, at *7 (Fed. Cl. Mar. 24, 2023) (citing *Golden*, 156 Fed Cl. at 623). Preliminary infringement contentions "serve, and must be specific enough, to put the opposing party and the court on notice of [the] plaintiff's position as to 'where each element of each infringed claim is found within the accused device.'" *Golden*, 156 Fed. Cl. at 627 (quoting *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 12, 16 (2008)).

5

### III. Analysis

Defendant argues that Plaintiff's Infringement Contentions [#47-1] are deficient in two key respects: (1) the contentions for Claims 1, 13, and 21 are not specific and do not identify the structures alleged to infringe; and (2) the contentions for other claims, such as claims 3 and 14, do not articulate the basis for the alleged infringement. *Motion* [#47] at 4-6; *see also AB Hearing Tr.* [#60] at 23:19-23 (arguing that "there's an issue with respect to certain claims where the physical structure has been identified as infringing, but there's not an explanation of how that physical structure allegedly matches up to the claim language"), 29:13-30:11 (regarding Plaintiff's purported failure to explain why and how the Accused Product infringes Claim 3), 31:13-33:4 (regarding Plaintiff's purported failure "to say why [the Accused Product] infringes" Claim 14). Defendant cites two district court cases, *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022 (N.D. Cal. 2010) and *ZitoVault, LLC v. IBM Corp.*, No. 3:16-cv-0962-M, 2018 WL 2971179 (N.D. Tex. Mar. 29, 2018), for the proposition that infringement contentions must explain the basis for Plaintiff's allegation of infringement. *Motion* [#47] at 3-4.

Plaintiff argues that it has met its obligations under Local Patent Rule 4(b) by identifying the structure alleged to infringe the '070 Patent, *i.e.*, the BALUN and the ferrite element. *See Response* [#49] at 2-4. It argues that its infringement contentions need not explain how the specific claim limitation is met because that is an issue for expert discovery. *Id.* at 2 (citing *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008)).

A.  **Claims 1[f], 13[g], and 21[f]**

Plaintiff's infringement contentions discuss the BALUN first by reciting the relevant claim language. The Court will cite Claim 1[f] here, but the instrumentalities accused of infringing Claims 13[g] and 21[f] are identical. *Compare Infringement Contentions* [#47-1] at 10-12 (Claim 1[f]) *with id.* at 24-26 (Claim 13[g]), 47-49 (Claim 21[f]). All three claims refer to "wherein the length of said BALUN is about ½ wavelength of the highest frequency of the frequency range of said second signal and wherein said first signal is an up to 15A and 50 to 60 Hz AC signal and said frequency range of said second signal is at least 5 MHz to 3000 MHz RF." *Id.* at 10, 24 (same but omitting the numerical details of the two signals), 47 (same as 24). As for the Accused Instrumentalities, Plaintiff asserts as follows:

> Upon information and belief, including without limitation, the Accused Instrumentality includes a BALUN with a length that is about ½ wavelength of the highest frequency of the frequency range of said second signal and wherein said first signal is an up to 15A and 50 to 60 Hz AC signal and said frequency range of said second signal of the Accused Instrumentality (*i.e.*, 5 MHz to 1,800 MHz) is within the at least 5 MHz to 3000 MHz RF frequency range. Additionally, the general formula for wavelength in a non-free space medium is $\lambda = \frac{c}{\sqrt{e_r u_r} f}$, c=speed of light, f = Frequency, $e_r$ = relative permittivity, $u_r$ = relative permeability (*see e.g.*, https://sibersci.com/wavelength-calculator/). In free space, $\sqrt{e_r u_r}$ = 1; however, upon information and belief, the balun is a ferrite material, which will impact the values in this equation. Technetix has acknowledged this fact for the Accused Instrumentality in stating that the "relative permeability is not the same for all frequencies, as it can be much higher at low frequencies and much lower at high frequencies," thereby supporting the belief that the elements herein are satisfied. Additionally, upon information and belief, the electrical length of the BALUN depicted below is about 1/2 wavelength in accordance with causing the reflected part of said second signal to be at substantially 180 degrees phase shift with respect to said first signal.
>
> [Technetix Traditional Outdoor Multitaps 8-way 1.8 GHz chart]
>
> [Image of cylindrical ferrite element]

7

> Technetix confirmed in a March 27, 2024 communication that the relative permeability of the cylindrical ferrite element in the Accused Instrumentality can be "much higher [than 4000] at low frequencies" and "much lower [than 4000] at higher frequencies." Therefore, the cylindrical ferrite element of the Accused Instrumentality (depicted above) has magnetic properties that can vary significantly with frequency. As such, upon information and belief, the cylindrical ferrite element of the Accused Instrumentality (depicted above) has magnetic properties resulting in a length of the BALUN (also depicted above) being about 1/2 wavelength of the highest frequency of the frequency range of said second signal, which upon information and belief, may be between approximately 0.5 cm to 2.0 cm. Accordingly, upon information and belief in combination with Technetix's acknowledgement that the relative permeability of the cylindrical ferrite element depicted above varies and can be much lower at higher frequencies, such as 1.8 GHz, the Accused Instrumentality includes the feature whereby the electrical length of the BALUN is about 1/2 wavelength at the highest frequency.
>
> This claim element is believed to be literally present in the Accused Instrumentality. To the extent that this element is found not to be literally present in the Accused Instrumentality, ATX asserts that this claim is satisfied by the Accused Instrumentality under the doctrine of equivalents for those elements for with equivalents is permitted.

*Id.* at 10-12, 24-26 (Claim 13[g]), 47-49 (Claim 21[f]).

While the infringement contentions include a photograph of a cylindrical ferrite element, they do not point to any specific components or explain why their length meets the claim. *Id.* at 11; *cf. Motion* [#47] at 4 (arguing that the contentions "do not identify a component that allegedly meets the recited length or, more importantly, explain why the length of any component meets the claim"). The contentions render unclear which element is alleged to be "between approximately 0.5 cm to 2.0 cm" and even the assertion that the cylindrical ferrite element's magnetic properties "can vary significantly with frequency" is vague because it does not explain the basis for believing that those variations potentially fall within the claim. *Infringement Contentions* [#47-1] at 10-12; *see also Power Density Sols, LLC*, 2023 WL 2624386, at *7 ("References to components merely 'capable of operating in a manner that infringes' do not suffice to identify which

8

component meets the claim limitation and functions as claimed."). Finally, many of Plaintiff's contentions are made "upon information and belief," which may be permissible in the pleading stage but is insufficient at the contentions stage. *Cf. Tech. Props. Ltd. LLC*, 114 F. Supp. 3d at 845 (stating that "on information and belief" cannot satisfy claim chart obligations).

Defendant's cited cases illustrate these problems. In *Shared Memory Graphics LLC*, the plaintiff's claim charts "fail[ed] to specifically identify the display data distribution bus limitation[] in Defendants' products." 812 F. Supp. 2d at 1025 (footnote omitted). The contentions did not indicate which structures constituted the bus, rendering it unclear whether a particular "Memory IF" component was part of the bus. *Id.* at 1026. The charts failed to clearly indicate where data would flow among the identified structures. *Id.* The court concluded that the at-issue infringement contentions were "too vague to provide fair notice as to what components and circuitry of the accused products infringe their patents." *Id.* at 1025. In *ZitoVault, LLC*, the court noted that "[m]imicking the language of the claims when charting infringement is insufficient," as is "[i]ncorporating screenshots in lieu of some explanation" because it forces the accused infringer to "guess how [the] [p]laintiff claims the accused instrumentalities allegedly infringe." 2018 WL 2971179, at *3 (citing *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005)).

In *Power Density Solutions*, which concerned patents related to electronic cooling technologies, the United States Court of Federal Claims deemed insufficient supplemental infringement contention claim charts which did not disclose "the claimed means for adjusting the cooling fluid flow rate." 2023 WL 2624386, at *7. The court found insufficiency because the failure "to identify any corresponding structure" or a mere

9

"reference [to] a general structural component" did not "address[ ] the specific restrictions built into the claim limitation," and "[r]eference[] to components merely 'capable of operating in a manner that infringes' do not suffice to identify which component meets the claim limitation[.]" *Id*. In other words, the "supplemental infringement contentions fail[ed] to articulate any infringement theory with the specificity necessary to provide reasonable notice to the defendant" and, thus, were stricken. *Id*.

Finally, in *Golden*, which concerned patents related to sensor technology for chemical, biological, or radiological compounds and a locking mechanism, the Court of Federal Claims deemed preliminary infringement contentions deficient for two reasons. 2021 WL 3238860, at *3-5. First, the contentions failed to "identify a component in the accused products which meets [the] claims limitations of a biological, chemical, or radiological sensor." *Id*. at *4. Second, the narrative provided for a locking feature did not actually "identif[y] a locking feature or explain[] how it operates in a way that infringes." 2021 WL 3238860, at *3, 6.

Because the Court of Federal Claims' Patent Rules are similar to the District of Colorado's, the Court finds *Power Density Solutions* and *Golden* persuasive and instructive.[5] Here, Plaintiff's infringement contentions, at least as to Claims 1[f], 13[g], and

---

[5] PRCFC 4 requires Preliminary Disclosure of Infringement Contentions to contain: (a) the claim in each product, process, or method that is allegedly infringement; (b) each product, process, or method that allegedly infringes the identified claim; (c) identification of where each element of each asserted claim is found within each accused product, process, or method; (d) whether each element of each identified claim is alleged to be literally present or present under the doctrine of equivalents; and (e) the priority date to which each asserted claim is allegedly entitled.

Analogously, D.C.COLO.LPtR 4(b) requires: (a) identification of each claim that the accused instrumentality allegedly infringes; (b) identification of the specific location of each limitation of the claim within accused instrumentality; (c) a statement of whether each limitation of each asserted claim is literally present in the accused instrumentality; and (d) where direct infringement by multiple parties is alleged, a description of each party's role in the direct infringement.

10

21[f], suffer from similar deficiencies. They largely mimic the claim language, in conclusory fashion and "upon information and belief," without explaining the basis for their belief that the Accused Product infringes. *Cf. Zitovault, LLC*, 2018 WL 2971179, at *3 ("Mimicking the language of the claims when charting infringement is insufficient."); *Tech Props. Ltd. LLC*, 114 F. Supp. 3d at 845 (noting insufficiency of "a conclusion based 'on information and belief'"). Although the infringement contentions include an image of a cylindrical ferrite element and a chart with various specifications, they do not specifically identify any component that allegedly infringes the claims. Given Plaintiff's vague description of length ("between approximately 0.5 and 2.0 cm") and their threadbare assertion that the cylindrical ferrite element "has magnetic properties that can vary significantly with frequency," Plaintiff suggests, at most, that the Accused Product *is capable of* operating in a manner that infringes these three claims, which is insufficient at this stage. *Infringement Contentions* [#47-1] at 11, 12; *but cf. Power Density Sols.*, 2023 WL 2624386, at *7 (noting insufficiency of "[r]eferences to components merely 'capable of operating in a manner that infringes'").

Plaintiff's cited case, *Linex Technologies*, does not persuade the Court otherwise. There, the court acknowledged the Eastern District of Texas Patent Rule requirement that a plaintiff "provide 'particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent rules themselves.'" 628 F. Supp. 2d at 713 (citations omitted). The court distinguished a plaintiff's duty to "outline in detail its specific Infringement Contentions regarding particularly Accused Products" from the plaintiff's duty to prove infringement following discovery. *Id.* at 713-14. Thus, the Court reads *Linex Technologies*

11

to stand for the proposition that a plaintiff's infringement contentions need not be specific enough to establish a prima facie case of infringement; rather, a plaintiff must provide sufficient information "to streamline the discovery process." *Id*. at 713.

Because the objected-to infringement contentions do not meet that standard, the Motion [#47] is **granted** as to Claims 1[f], 13[g], and 21[f]. Plaintiff must supplement its infringement contentions as to those claims so that they sufficiently identify and describe the accused instrumentalities.

B.   **Other Contentions**

Defendant briefly argues that Plaintiff's other claims "simply recite the claim language with no explanation of the basis for the infringement." *Motion* [#47] at 5. They assert that these contentions "do not include sufficient detail to satisfy the pleading standard for patent infringement, much less the detail required for infringement contentions." *Id*. at 5-6 (footnote citation omitted). They offer two examples: (1) claim 3, which recites a BALUN "wherein said first cylindrical ferrite element to remain unsaturated [sic] with said first signal"; and (2) claim 14, which recites that "RF signals reflected on said BALUN outer conductor from an upstream signal are substantially in the same phase as the RF signals sampled by said first circuitry from said upstream signal such that they are substantially canceled by said third circuitry." *Id.* at 6 (citing *Infringement Contentions* [#47-1] at 13, 34).

Again, the Court agrees with Defendant. In both instances, Plaintiff's description of the Accused Instrumentality is conclusory and offers no theory of infringement. Regarding claim 3, Plaintiff states, "Upon information and belief, as shown in the figures below, the Accused Instrumentality includes the BALUN of claim 1, wherein said first

12

cylindrical ferrite element is configured to remain unsaturated with said first signal, as depicted below." *Infringement Contentions* [#47-1] at 13. The depictions include the same photograph of the cylindrical ferrite element, with an arrow pointing to "First Cylindrical Ferrite Element," as well as the Technetics Traditional Outdoor Multitaps 8-way 1.8 GHz table. *Id.* at 13-14. Plaintiff fails to explain the basis of its belief that the depicted cylindrical ferrite element "is configured to remain unsaturated with said first signal," which is a conclusory recitation of the claim elements, and neither the picture nor the chart speaks for itself. *Id.* at 13; *cf. Tech Props. Ltd. LLC*, 114 F. Supp. 3d at 845 (commenting on the insufficiency of "on information and belief" to satisfy claim chart obligations). Similarly, Plaintiff does not explain how the data in the table demonstrates or suggests that the accused instrumentality infringes claim 3.

> Regarding claim 14, Plaintiff states:
>
> As shown in the figure below, the Accused Instrumentality includes <u>the power coupler of claim 13, wherein RF signals reflected on said BALUN outer conductor from an upstream signal are substantially in the same phase as the RF signals sampled by said first circuitry from said upstream signal such that they are substantially canceled by said third circuitry.</u>[6] The "Out/Tap" Isolation data below indicates that the <u>RF signals reflected on said BALUN outer conductor from an upstream signal are substantially in the same phase as the RF signals sampled by said first circuitry from said upstream signal such that they are substantially canceled</u>:
>
> [Technetix Traditional Outdoor Multitaps 8-way 1.8 GHz chart]
>
> This claim element is believed to be literally present in the Accused Instrumentality. To the extent that this element is found not to be literally present in the Accused Instrumentality, [Plaintiff] asserts that this claim is satisfied by the Accused Instrumentality under the doctrine of equivalents.

---

[6] The Court has highlighted the portions of Plaintiff's infringement contention directly copied from the language of claim 14.

*Id.* at 34 (emphasis added). The Court has underlined each portion of the infringement contention that copies claim 14's language and notes that this comprises almost the entire contention. Simply copy-pasting the claim language and asserting infringement in conclusory fashion, as Plaintiff does here, is insufficient. *Cf. Zitovault, LLC*, 2018 WL 2971179, at *3 (noting the insufficiency of "[m]imicking the language of the claims when charting infringement").

The Motion [#47] is **granted** as to Claims 3 and 14. Plaintiff must supplement its infringement contentions so that they sufficiently identify and describe the accused instrumentalities. To the extent Defendant takes issue with other infringement contentions relating to other claims, it did not identify or discuss those other contentions in any detail, so the Court deems those objections as undeveloped. Moreover, to the extent Defendant avers that Plaintiff has broadly failed to meet even pleading standards for patent infringement, the Court finds that such arguments are better resolved through its pending Motion to Dismiss [#22], which has not been referred to the undersigned.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that **Defendant's Motion to Compel Plaintiff to Supplement its Infringement Contentions** [#47] is **GRANTED**.

IT IS FURTHER **ORDERED** that Plaintiff is ordered to supplement its invalidity contentions relating to Claims 1[f], 3, 13[g], 14, and 21[f], on or before **May 13, 2025**.

Dated: April 21, 2025                           BY THE COURT:

                                                Kathryn A. Starnella
                                                United States Magistrate Judge