IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01391-SKC-KAS

ATX NETWORKS (TORONTO) CORP.,

     Plaintiff,

v.

TECHNETIX, INC.,

     Defendant.

_____

### ORDER ON PLAINTIFF'S MOTION TO COMPEL [#115]
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on Plaintiff's **Motion to Compel** [#115][1] (the "Motion"). Defendant filed a Response [#132] in opposition and Plaintiff filed a Reply [#137][2] in support. The Motion [#115] has been referred to the undersigned for adjudication pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D.C.COLO.LCivR 72.1(c)(4). The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Motion [#115] is **GRANTED in part** and **DENIED in part**.

---

[1] [#115] contains a few redactions to protect confidential commercial information. An unredacted version of the Motion is filed under Level 1 restriction at [#117]. Level 1 restriction limits access to the Court and to the parties. *See* D.C.COLO.LCivR 7.2(b).

[2] An unredacted version of the Reply is filed under Level 1 restriction at [#138].

## I.  Background

**A.  Alleged Patent Infringement**

In this matter, Plaintiff ATX Networks (Toronto) Corp. sues Defendant Technetix, Inc. for allegedly infringing its patent for a "Chockless Power Coupler," as described in U.S. Patent No. 8,149,070 (the '070 Patent). *See Am. Compl.* [#20] at 2, ¶ 8. The patent relates to "a multi tap device used in cable television systems to deliver audio, video, and data through a coaxial cable network to and from cable television subscribers." *Id.* at 3, ¶ 11. Plaintiff alleges that Defendant makes, uses, sells, offers for sale, and/or imports other multitap products such as the XFO Faceplate-Only 1.8 GHz Upgrade Motorola Multitap product. *Id.* at 4, ¶ 18. Plaintiff contends that Defendant's infringement of the '070 "has been willful" because "Defendant received notice of its infringement at least as early as on or about October 24, 2023," yet "continued to deliberately and intentionally commit acts of infringement by" making, selling, and offering for sale the Accused Product. *Id.* at 5, ¶ 31.

Claims 1, 13, and 21 of the '070 Patent cover a balun (as Defendant puts it, "a conventional adapter for converting signals that are 'balanced' to signals that are 'unbalanced'") and the "method for tapping part of an RF signal from a combined RF and AC signal" using a balun. *See '070 Patent* [#20-1] at 26-28; *Def.'s Motion to Compel Pl. to Suppl. Infringement Contentions* [#47] at 2[3].

---

[3] Page number citations refer to the numbering used by the Court's CM/ECF docketing system and not to the document's original numbering.

**B.     Genesis of Present Discovery Dispute**

The present discovery dispute concerns whether and the extent to which Plaintiff may obtain discovery regarding the XFO product, an unaccused product. In support of its request for discovery, Plaintiff presents two arguments. First, Plaintiff seeks this discovery to obtain information about Defendant's efforts to design around Plaintiff's patent. Plaintiff asserts that design around discovery is relevant to the issues of willful infringement, damages, and invalidity due to obviousness. Second, Plaintiff argues that it may conduct discovery into the XFO product because that product is reasonably similar to the accused OTTZ product. While these issues (of "reasonable similarity" and "design around" discovery) stem from a discovery hearing held on July 28, 2025, they first arose during a January 27, 2025 discovery hearing. Therefore, the Court provides a brief overview of the parties' arguments and the Court's rulings at those hearings.

**1.     January 27, 2025 Discovery Hearing**

At a January 27, 2025 discovery hearing, the Court considered whether to compel Defendant to produce samples of XFO devices. After argument, the Court concluded that Plaintiff "ha[d] articulated some basis as to the reasonable similarity" of the unaccused XFO product to the accused OTTZ product and ordered production of samples of the XFO device. *Jan. 27, 2025 Hr'g Tr.* [#59] at 70:20-24, 74:5-10; *see also* 73:3-7 (concluding that Plaintiff "laid sufficient grounds for *at least some* relevance") (emphasis added). Importantly, however, the Court did not actually find that the XFO and OTTZ products were reasonably similar.[4] Given the prospect that the samples might reveal that the XFO

---

[4] The Court, therefore, agrees with Plaintiff that the "Court has not made any determination whether the OTTZ and XFO multitaps are or are not 'reasonably similar' . . . to warrant discovery on [Defendant's] XFO multitaps on the infringement issue." *Reply* [#137] at 12.

device is not reasonably similar to the OTTZ device, the Court expressed concern that Plaintiff might still seek further discovery on the XFO device. *Id*. 71:2-7; *see also id*. at 72:22-73:2 (noting prospect of a future discovery hearing if, ultimately, Plaintiff is pursuing irrelevant theories because the products are not reasonably similar).

### 2.    May 7, 2025 Discovery Hearing

At a May 7, 2025 discovery hearing, the Court considered whether to compel Defendant to supplement its responses to various discovery requests. *See May 7, 2025 Courtroom Mins.* [#72]; *May 7, 2025 Hr'g Tr.* [#76][5] at 3:14-21. The disputed discovery requests included the following:

> Request for Production #3:
>
> All documents and things relating to any Accused Product and any improvements and/or additions thereto, including but not limited to: product guides; user manuals; instruction manuals; technical specifications drawings; schematics; training materials; sales presentations; notices; brochures; pamphlets; catalogs; catalog sheets; advertisements; fliers; storyboards; mockups; layouts; drawings; scripts for commercials; trade publications; trade displays; trade letters; trade show materials; circulars; trade releases; product releases.
>
> and
>
> Request for Production #12:
>
> All documents and things relating to any Accused Product and designing or attempting to design products having construction specifically intended to avoid infringement of any patent-in-suit.

In seeking to justify the breadth and scope of these discovery requests, Plaintiff's counsel argued that the requests for production sought relevant information because the XFO is either an infringing product and the requested information will enable Plaintiff to

---

[5] Due to the transcript's commercially sensitive contents, it is docketed under Level 1 restriction, which limits access to the Court and the parties. *See May 7, 2025 Courtroom Mins.* [#72] at 1.

amend its infringement contentions or the XFO is the product of Defendant's design-around efforts to avoid infringement. *May 15, 2025 Hr'g Tr.* [#76] at 12:24-13:6. In further support of these discovery requests, Plaintiff's counsel argued that the OTTZ and XFO products "do[] the same thing," though he also acknowledged that there are variances between the two types of products. *Id.* at 19:8-24. Ultimately, the Court denied Plaintiff's oral motion to compel a supplemental response to Request for Production #3, but ordered Defendant to supplement its production in response to Plaintiff's Request for Production #12; specifically, it ordered Defendant "to produce documents regarding its attempts, if any, to design around the [at-issue] patent[.]" *Id.* at 44:16-21, 46:13-14. At no time did the Court determine that the XFO and OTTZ products are reasonably similar. *See, e.g., id.* at 41:5-15 (stating, "if we're here again for another discovery dispute . . . you can help [the Court] understand what it is [Plaintiff] learned from [an amended discovery request] that demonstrates" a reasonable similarity).

### 3. July 28, 2025 Discovery Hearing

On July 28, 2025, the Court held another discovery hearing, this time regarding the parties' competing oral motions to compel supplemental responses to discovery requests. *See Courtroom Mins.* [#108]; *July 28, 2025 Hr'g Tr.* [#110]. The Court adjudicated several issues but took under advisement Plaintiff's oral motion to compel supplemental responses to Requests for Admission Nos. 1, 2, 3, 5, 6, 7, 8, 9, and 10[6], and Interrogatories Nos. 11, 13, 14, and 15. *See Courtroom Mins.* [#108] at 1-2; *July 28,*

---

[6] Plaintiff's briefing only addresses three Requests for Admission, numbers 1-3. Because Plaintiff does not address the other six at-issue Requests for Admission—even after Defendant highlighted this in its response brief, *see Response* [#132]—the Court deems Plaintiff's objections to Defendant's responses as waived. *See Tilley v. Choate*, 502 F. App'x 760, 763 (10th Cir. 2012) (finding waiver of issue not briefed).

*2025 Hr'g Tr.* [#110] 158:2-6. The Court ordered briefing on two issues: (1) how the requested discovery relates to a "reasonably similar" product; and (2) whether the "reasonably similar" analysis applies to "design-around" discovery. *July 28, 2025 Hr'g Tr.* [#110] at 151:7-152:10, 153:7-157:19. The parties' briefing is complete, and the issues are ripe for ruling. Central to the pending discovery dispute is whether and to what extent Plaintiff may conduct discovery into whether Defendant was aware of the '070 patent and endeavored to design around it. *See July 28, 2025 Hr'g Tr.* [#110] at 40:1-15, 107:18-23, 11:15-3-6, 117:12-17, 119:10-14, 119:19-24, 121:22-25, 122:13-16; *see also id.* at 134:22-135:9.

## II.  Legal Standard

The Federal Rules of Civil Procedure permit parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering factors including "the issues at stake in the action," "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." FED. R. EVID. 401(a). Where a party fails to produce documents requested under Federal Rule of Civil Procedure 34, the requesting party may move for an order compelling production. FED. R. CIV. P. 37(a)(3)(B)(iv). However, "it is axiomatic that discovery is not intended to afford a party an opportunity to seek information for an unasserted claim, or a yet-to-be filed case." *All Plastic, Inc. v. SamDan LLC*, No. 20-cv-01318, 2021 WL 2979005, at *7 (D. Colo. Feb. 15, 2021) (citing *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009) (noting, "Judges are trusted to

prevent 'fishing expeditions' or an undirected rummaging through . . . [materials] for evidence of some unknown wrongdoing")).

Local Patent Rule 4 requires "a party claiming patent infringement [to] serve Infringement Contentions identifying with *specificity* each accused product or process[.]" D.C.COLO.LPtR 4(a) (emphasis added). Additionally, a party claiming patent infringement "shall serve a claim chart for each Accused Instrumentality"; the chart "shall be specific and shall "identif[y] . . . each claim of each patent in suit that is allegedly infringed by the Accused Instrumentality" and "[i]dentif[y] . . . the specific location of each limitation of the claim within each Accused Instrumentality[.]" D.C.COLO.LPtR 4(b)(1),(2). Infringement contentions serve to notify a defendant of a plaintiff's infringement theories; however, contentions need not prove infringement. *See Wi-Lan Inc. v. Vizio, C.A.*, No. 15-cv-788, 2018 WL 669730, at *1 (D. Del. Jan. 26, 2018) ("Infringement contentions must serve the purpose of providing notice to [the] [d]efendants of [the] [p]laintiff's infringement theories beyond that which is provided by the mere language of the patent."). The Local Patent Rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Fiber, LLC v. Ciena Commc'ns, Inc.*, No. 13-cv-00840-PAB-KLM, 2016 WL 11697061, at *3 (D. Colo. Aug. 10, 2016) (quoting *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2016 WL 3648594, at *2 (N.D. Cal. July 6, 2016)). However, the Local Patent Rules must not be interpreted to conflict with "the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

### III. Analysis

"Courts have generally taken one of two views in determining the appropriate scope of discovery in patent cases." *Fiber, LLC*, 2016 WL 11697061, at *3 (citing *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-cv-00772-GMN-NJK, 2016 WL 3353935, at *3-4 (D. Nev. June 10, 2016)). "The minority view, primarily adopted by the Northern District of California," limits the scope of discovery "'to products specifically identified in the infringement contentions.'" *Id*. (quoting *Hologram USA*, 2016 WL 3353935, at *4). "The majority view expands this scope of discovery 'to include products reasonably similar to those accused in the infringement contentions.'" *Id*. (quoting *Hologram USA*, 2016 WL 3353935, at *4). The majority view is premised on the broad scope of discovery permitted under Federal Rule of Civil Procedure 26 "and the idea that the general contours of a desire for broad discovery apply as much in patent cases as in any other," and that "a party may be able to amend its contentions as it acquires information during discovery." *Id*. (quoting *Hologram USA*, 2016 WL 3353935, at *4). Therefore, "no bright line rule governs whether discovery can be obtained only for the products expressly accused in infringement contentions." *Id*. (quoting *Hologram USA*, 2016 WL 3353935 at *4). Put differently, the majority view permits discovery regarding "nonaccused products reasonably similar to the accused instrumentalities." *Id*. (quoting *Hologram USA*, 2016 WL 3353935 at *4).

The majority view has been adopted by some courts within the Tenth Circuit, as well as by at least one judge in this District. *Id*. at *3-4 (finding majority view "especially persuasive and appropriate") (citing *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2015 WL 11121849,

at *3 (D. Kan. May 12, 2015). The majority view has also been adopted by the undersigned. *See SecureNet Sols. Grp., LLC, v. Arrow Elecs., Inc.*, No. 22-cv-01254-KAS, 2024 WL 6916808, at *5 (D. Colo. Dec. 2, 2024).

## A.    Whether Plaintiff has Demonstrated that the XFO Product is Reasonably Similar to the Accused OTTZ Product

To satisfy the "reasonably similar" requirement, a party seeking discovery must first "'identify with requisite specificity the type of product' at issue." *dlhBowles, Inc. v. Jiangsu Riying Elecs. Co.*, No. 5:21-CV-00170-DAR, 2022 WL 672073, at *1 (N.D. Ohio Mar. 7, 2022) (quoting *Tesseron, Ltd. v. R.R. Donnelley & Sons Co.*, No. 1:06-CV2909, 2007 WL 2034286, at *3 (N.D. Ohio July 10, 2007)). Second, "the requesting party 'must also identify with specificity the component, characteristic, or element of the product' that the party believes will render the product infringing." *Id*. (quoting *Tesseron*, 2007 WL 2034286, at *3). "If the requesting party can articulate, in a focused, particularized manner, the characteristics or components that the unaccused products must have in order to suggest that they may infringe the patents-in-suit, the discovery-at-issue is more likely to be seen as relevant—as relating to an issue necessarily in the case." *Id* (quoting *Invasas Corp v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 279 (D. Del. 2012)) (internal quotation marks and ellipsis omitted). "If, however, 'the proffered basis for the discovery amounts to a broader, more generalized argument as to how the unaccused products may be similar to the accused products, the discovery request is more likely to be viewed as the product of suspicion or speculation—one less likely to lead to relevant evidence and more likely to be denied." *Id*. (quoting *Invasas Corp.*, 287 F.R.D. at 279) (internal quotation marks omitted).

Plaintiff argues that Defendant's XFO product is reasonably similar to Defendant's accused OTTZ product in the following ways. *See Motion* [#115] at 13-14 (listing nine similarities). For example, the two products operate at the same frequency and the same current, and the two products are multi-taps. *July 28, 2025 Hr'g Tr.* [#110] at 147:5-11; *see also Pl.'s Ex. O* [#117-4][7] at 19 (identifying frequency and current similarities). Additionally, the data values for TAP Loss In-TAP and Insertion Loss IN-OUT are similar. *See id.* at 22. For further similarity, Plaintiff points to the fact that both the accused OTTZ product and the XFOMZ product have main line output ports to receive an AC component and part of a RF signal to fee a main line distribution cable. *Id.* at 25. Additionally, the two products have output tap ports through which a summed RF signal is fed following a process where three circuitries are coupled to reverse the phase of a reflected RF signal from one of the circuitries and that reversed RF signal is summed with an RF signal from another circuitry. *Id.* at 26. Also, in both products the output tap port is used to feed splitting devices with a summed RF signal for the distribution of that RF signal to subscribers' drop lines. *Id.* Additionally, both products have a power passing signal capacity up to 15 A and 60 Hz AC and a RF signal with a frequency of at least 5 MHz to 3000 MHz. *Id.* at 27.

Beyond identifying these similarities, Plaintiff repeatedly asserts that the presence of a balun in the XFO product would satisfy several elements of the '070 Patent and render the XFO an infringing product. *See id.* at 17-16 (referencing claim elements 1[a], [b], [d], [e], [f], [p]; 13[a], [b], [c], [d], [e], [f], [g], [h], [i], [l], [p]). Thus, Plaintiff has articulated, in a focused, particularized manner, the component, i.e., a balun as similarly found in the

---

[7] [#117-4] is filed under Level 1 restriction because of its commercially sensitive contents. A publicly accessible, redacted version of Pl.'s Ex. O is docketed at [#115-15].

OTTZ products, that the unaccused XFO product must have for Plaintiff to accuse it of infringing the '070 Patent. *dlhBowles*, 2022 WL 672073, at *1. Therefore, discovery Plaintiff seeks to conduct regarding whether the XFO product contains a balun is relevant to an issue necessarily in the case. *Id*.

The reasoning in *High 5 Games, LLC v. Marks*, No. 2:13-CV-07161-JMV-MF, 2019 WL 1499769, at *3, 7 (D.N.J. 2019) is instructive. In *High 5 Games*, a patent infringement suit regarding video games, a court-appointed special master considered whether and to what extent he should permit discovery into 87 unaccused products, which had features that the accused products also had, including a stacking feature and oversized symbols. *Id*. at *1-3. One of the discovery requests sought identification of, and technical information related to, all the defendants' games that contained the accused features. *Id*. Specifically, the request sought identification of and documents related to:

> each game created, sold, marketed, or used by [the defendants] that includes (a) the Stacked Symbol Feature; (b) the Oversized Symbol Feature; or (c) Invisible Stacks Feature and identify which games utilizes each of those features.

*Id*. at *6.

To demonstrate the similarity between the accused and unaccused products, the plaintiff submitted dozens of charts showing how the defendants utilized the plaintiff's stacking feature and oversized symbols. *Id*. at *2. Additionally, the plaintiff drew on publicly available information to conclude that the unaccused products operate like the plaintiff's patented product. *Id*. at *3. In response, the defendants objected on relevance grounds. *Id*. at *2. In addition, they made various arguments, including that the plaintiff never explained how the unaccused products that used oversized symbols met the

patent's claims, and the defendants disagreed that mere use of oversized symbols renders a product infringing. *Id*. at *4.

Ultimately, the special master disagreed with the defendants and ordered them to respond to the discovery requests because the unaccused games "share reasonably similar features and a nexus with those games specifically accused of infringement," and the plaintiff "specifically identified the 87 [unaccused games] which it believes contain infringing features and for which it seeks discovery." *Id*. at *7.

*Honeywell International, Inc. v. Acer America Corporation*, 655 F. Supp. 2d 650 (E.D. Tex. 2009) is also instructive. There, the court considered a request to conduct discovery regarding all the defendant's products that "perform dot and/or column inversion," including model numbers, technical specifications, and sales information. 655 F. Supp. 2d at 652. The court allowed a narrower universe of the requested discovery because the plaintiff described "element by element" how a subset of the unaccused products "are structurally identical and operate in a manner consistent with the infringement theory in [the plaintiff's preliminary infringement contentions]." *Id*. at 657-58; *see also id*. at 657 ("Although the [c]ourt cannot say with certainty that all Driver ICs operate in the exact same manner, Honeywell has shown that the Driver ICs in [the defendant's] dot and/or column inversion products likely operate in a manner reasonably similar to the infringement theory described in Honeywell's [preliminary infringement contentions]").

Here, Defendant argues that Plaintiff has not shown reasonable similarity because it "has not shown that the XFO meets the following claim elements: a balun; a coaxial structure; a central conductor to allow a first signal and part of a second signal to flow

through; an outer conductor, enclosing at least partially said central conductor, grounded at one side to reflect part of said signal at substantially 180 degrees phase shift with respect to said first signal; a first cylindrical element enclosing at least part of said coaxial structure to increase the inductance of said coaxial structure; and the length of said BALUN is about ½ wavelength of the highest frequency of the frequency range of said second signal." *Response* [#132] at 13.

The Court disagrees. The claim language reveals that Defendant's laundry list boils down to a *single* item: a balun. According to the '070 Patent, a "balun" consists of all the things in Defendant's list. *See '070 Patent* [#20-1] at 26, cols. 16-18, Claims 1 & 13. If the XFO product has a balun that consists of the things in Defendant's list, then all the elements to Claims 1 and 13, the missing pieces to Plaintiff's puzzle, are satisfied. *Pls. Ex. O* [#117-4] at 19-26. Plaintiff has demonstrated element by element—to the extent it can based on the information available to it—how the unaccused XFO product is structurally similar to and operates similarly to the accused OTTZ product. Further, "the fact that the [accused and non-accused] products have different capabilities is not dispositive; the question is whether the products, whatever their capabilities, operate in a manner reasonably similar to [the plaintiff's] infringement theories." *Micro Enhanced Tech., Inc. v. Videx, Inc.*, No. 11 C 5506, 2013 WL 12618019, at *2 (N.D. Ill. June 28, 2013) (ordering discovery into unaccused products upon reasoning that their capability of transmitting Bluetooth signals, instead of the infrared signals that the accused products transmitted, fell within the patent's claim of "a control station for transmitting an electromagnetic signal").

To further illustrate the point, this case is distinguishable from *Eagle View Technologies, Inc. v. Nearmap US, Inc.*, No. 2:21-cv-00283, 2023 WL 3551409, at *5 (D. Utah May 18, 2023). There, the court considered whether to compel supplemental responses to discovery requests regarding unidentified products that functioned similarly to the accused products. *Id.* at *1. The court denied the request because the record before it failed to establish that the infringement contentions notified the plaintiff of a specific theory of infringement and the plaintiff failed to establish that the unaccused products for which it sought discovery "operate[d] in a manner reasonably similar to [the theory articulated in the infringement contentions]." *Id.* at *4. Here, the Court finds that Plaintiff's Supplemental Infringement Contentions [#117-2] articulate a specific infringement theory and Plaintiff has established that the XFO product operates in a manner reasonably similar to that theory.

Because Plaintiff has demonstrated that the unaccused XFO product is reasonably similar to the accused OTTZ product, the Court concludes that Plaintiff is entitled to discovery regarding the XFO product.

**B.      Requests for Admission Nos. 1-3**

Request for Admission No. 1 states:

> Admit that no XFO Product includes or has ever included a component pertaining or relating to a Balun of any type, including without limitation a winding Balun.

Request for Admission No. 2 states:

> Admit that at least one reason why no XFO Product includes or has ever included a component pertaining or relating to a Balun of any type, including without limitation a winding Balun, relates or pertains in any way to your attempt, intention, or efforts for the XFO Product not to be found to infringe the patent-in-suit.

Request for Admission No. 3 states:

Admit that at least one XFO product includes or has ever included a component pertaining or relating to a Balun of any type, including without limitation a winding Balun.

*Pl.'s Ex. O, ATX's Written Disc. Dispute Chart – July 28, 2025 Disc. Hr'g.* at 1-3 [#117-4].

Defendant objected to these three requests for admission on grounds that they seek "technical discovery concerning any XFO product," which "[t]he Court has ruled that ATX is not permitted[.]" *Id*.

Plaintiff argues that Request for Admission No. 1 seeks information that "is relevant to ATX's allegations and claims of infringement of the '070 Patent by Technetix, including willful infringement." *Id*. at 1. Plaintiff further states, "[i]f this RFA is admitted, then ATX anticipates seeking to amend its infringement contentions . . . since the only missing element pertains to the components of a Balun." *Id*. Plaintiff further argues that this request is "relevant to the design around issue." *Id*.

Plaintiff argues that Request for Admission No. 2 seeks information that is "relevant to [Defendant's] design-around efforts, which pertains to the willful infringement issue for the accused OTTZ product and to damages if such infringement is found to be willful." *Id*. at 2.

Plaintiff argues that Request for Admission No. 3 "is relevant to [its] claim of infringement of the '070 Patent, as the XFO product line is reasonably related and similar to the accused OTTZ product line and 'reasonably similar to [ATX's] specific infringement theory.'" *Id*. at 3. Plaintiff further asserts, "[i]f this RFA is admitted, . . . . ATX will seek to amend its infringement contentions to assert infringement of the XFO product on grounds that the XFO product includes the only element not already identified in [its] reasonable similarity chart[.]" *Id*.

In response, Defendant presents three arguments: (1) Plaintiff impermissibly seeks discovery on an unaccused product (XFO) despite not having established reasonable similarity to the accused product; (2) these requests seek information beyond design-around discovery; and (3) these requests are overly broad and vague because the "balun" is an undefined term in the requests. *Response* [#132] at 12-14.

In reply, Plaintiff argues that "balun" is not a vague term because it is "recited in every claim of the '070 Patent" and discovery has revealed that Defendant's employees understand what it is. *Reply* [#137] at 6-7. Additionally, Plaintiff reiterates that Request for Admission No. 2 relates to design-around discovery. The Court addresses these arguments in turn.

Regarding Requests for Admission Numbers 1 and 3, the Court finds that Plaintiff has the better argument. Requests Numbers 1 and 3 specifically concern whether any XFO product has or did have a balun, which is an element of the claimed patent. Plaintiff is not bashful about the purpose of these two admissions requests: If these requests are admitted, Plaintiff will seek to amend its infringement contentions. Because the Court has ruled that Plaintiff is entitled to discovery regarding the XFO product, the Court **grants** Plaintiff's Motion [#115] and orders Defendant to supplement its responses to Requests for Admission Numbers 1 and 3.

Regarding Request for Admission Number 2, the Court also finds that supplemental responses are warranted. If the XFO product does not have a balun, this request seeks discovery into why and whether the balun's absence is the product of Defendant's efforts to design around the patent. Beyond reasonably similar products, courts have permitted discovery regarding a defendant's efforts to design around a

plaintiff's patent. *See*, *e.g.*, *Illumina, Inc. v. BGI Genomics Co.*, No. 20-cv-01465-WHO (TSH), 2020 WL 7047708, at *1 (N.D. Cal. Dec. 1, 2020); *see also FCX Solar, LLC v. FTC Solar, Inc.*, Nos. 21-cv-03556, 21-cv-08766, 2022 WL 3584946, at *4 (S.D.N.Y. Aug. 22, 2022) (rejecting argument that "design-around" discovery is limited to products that are reasonably similar to the accused product). Courts have permitted this discovery because "a legitimate attempt to design around a patent and a good faith belief that one has done so may undercut a finding of willfulness." *Illumina*, 2020 WL 7047708, at *1. Design-around discovery may also be relevant to damages, whether reasonable royalty or lost profit damages, if the alleged infringer had an unimplemented but available design. *Id*. at *2; *see also FCX Solar, LLC*, 2022 WL 3584946, at *3-4 (noting that a greater reasonable royalty rate may be justified if a "non-infringing alternative is not available or cannot be easily [utilized]").

Accordingly, the Court **grants** Plaintiff's Motion [#115] and orders Defendant to supplement its response to Request for Admission Number 2.

## C.    Interrogatory Nos. 11, 13, 14, and 15

### Interrogatory No. 11

Interrogatory No. 11 asks Defendant to identify whether a balun or a choke/power choke is in each OTTZ product and each XFO product, for which approximately 50 variations exist. *Pl.'s Ex. O, ATX's Written Disc. Dispute Chart – July 28, 2025 Disc. Hr'g*. at 1-3 [#117-4]; *Motion* [#115] at 16. This interrogatory seeks information about Defendant's design-around efforts. Plaintiff explains that it "cannot discern whether all XFO products have power chokes or if some, like the OTTZ product, have baluns and not power chokes." *Motion* [#115] at 16. Plaintiff further explains that, if XFO products contain

a power choke—a more expensive option than baluns—Plaintiff needs discovery regarding why Defendant chose a costlier, more difficult option. *Id*.

In further support of Interrogatory No. 11's relevance, Plaintiff further explains that Interrogatory No. 11 "targets the physical and electrical characteristics of the balun and why they were selected" for certain OTTZ and XFO products. *Id*. Plaintiff ostensibly needs this information to respond to Defendant's contention that the OTTZ's winding baluns are different from the baluns claimed in the '070 Patent, which relates to non-infringement and willful infringement, whether Defendant attempted to design around the '070 Patent, and Plaintiff's damages. *Id*. at 16-17; *see also Reply* [#137] at 9-10.

In response, Defendant argues that Interrogatory 11 extends beyond seeking information about which products contain a balun or a choke and the reason for that design choice. *Response* [#132] at 15. To the extent this interrogatory relates to the defense of non-infringement, Defendant further argues that Plaintiff "has not accused the XFO of infringement, and therefore there is no such defense in the case." *Id*. Finally, Defendant argues that this interrogatory is unduly burdensome and overly broad because it contains multiple subparts that "make[] various distinct inquiries concerning each product code for the XFO products." *Id*.

In reply, Plaintiff addresses Defendant's unduly burdensome and overly broad argument by contending that Defendant "fails to argue how or why the information sought in [Interrogatory 11] is not directed to the common theme of the balun or power chokes and their attributes." *Reply* [#137] at 10.

At the outset, and for reasons already discussed, XFO's status as an unaccused product does not place Interrogatory No. 11 out of bounds. Thus, the Court considers

whether this interrogatory seeks irrelevant information or is overbroad and unduly burdensome.  Interrogatory No. 11 is a long run-on sentence. Distilled to its components, this interrogatory seeks, with respect to each accused OTTZ product and each XFO product: (1)  whether any current, past, or planned future version contains a choke, power choke, or a balun; (2) all reasons why Defendant chose to use a choke, power choke, or a balun for that product; (3) the part number or identifying nomenclature for each balun, (4) a description of each balun's components and specifications, (5) all reasons why Defendant chose particular material for the ferrite element of the balun; (6) all performance characteristics of the balun; (7) the number of wire turns selected for the balun; and (8) identification of all configurations Defendant considered but did not select for the balun and the reasons for the non-selection.

Defendant argues that this interrogatory contains multiple discrete subparts which should be separately counted. *See Response* [#132] at 15. The Court agrees. On a macro-level, this interrogatory seeks to delve into Defendant's design choices. But on a micro-level, this interrogatory inquires about discrete themes: product components, reasons for design choices; identifying nomenclature; and performance characteristics. Thus, Interrogatory No. 11 contains at least three interrogatories. *See Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 218 (C.D. Cal. 2009) (reasoning that an interrogatory's distinct parts and subparts seeking information about a defendant's alleged patent infringement counted as multiple interrogatories because they had more than one logically or factually related theme); *Theobles v. Indus. Maint. Co.*, 247 F.R.D. 483, 485 (D.V.I. 2006) (noting that once an interrogatory subpart introduces a line of inquiry separate and distinct from the portion that precedes it, the subpart must be

considered a separate interrogatory). Assuming that this computation does not exceed Plaintiff's allotted interrogatories, the Court next considers whether this interrogatory and its subparts are overbroad and unduly burdensome.

A request of this kind was contemplated by the court and permitted in *High 5 Games*. *See* 2019 WL 1499769, at *6 (discussing permissibility of requests that sought identification of and documents related to each game that contained the plaintiff's patented features). Likewise, the court in *Honeywell* permitted a similar request seeking model numbers and technical specifications for various products by the defendant. *See* 655 F. Supp. 2d at 652. In *FCX Solar, LLC v. FTC Solar, Inc.*, the court allowed discovery into the defendant's next-generation design because the discovery related to the asserted affirmative defense of invalidity based on obviousness. Nos. 21-cv-03556, 21-cv-08766, 2022 WL 3584946, at *6-8 (S.D.N.Y. Aug. 22, 2022). Specifically, the court granted the plaintiff's motion to compel supplemental responses to discovery requests that sought all technical and testing-related documents for the defendant's current- and next-generation solar trackers. *Id*. at *1. Courts deem this information relevant to an obviousness inquiry under 35 U.S.C. § 103, which includes factors such as "commercial success, long felt but unsolved needs, and failure of others." *Id*. at *7 (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)) (internal quotation marks and modification omitted). Whether an alternate "design is able to address the same need as Plaintiff's patent is thus relevant to an assessment of whether the patent was obvious at the time of invention." *Id*. Additionally, whether Defendant unsuccessfully tried to develop a product that provided the same "function as Plaintiff's patented design would be relevant to show that the patent was not obvious." *Id*.

Here, discovery has revealed that Defendant had drawn from its "knowledge and success" from its 1.8 GHz OTTZ outdoor taps to "develop[] XFO faceplate upgrades for existing tap housing." *Pl.'s July 28, 2025 Hr'g PowerPoint Presentation* at 7 (citing internal memo from M. Markhorst); *see also Pl.'s Ex. K* at 4 [#117-3][8]. Therefore, the Court finds that Interrogatory No. 11 is not overbroad. To the extent providing a narrative response is unduly burdensome, Defendant may avail itself of Federal Rule of Civil Procedure 33(d) to answer the interrogatory by specifying and providing the business records that contain the requested information.

Accordingly, the Court **grants** Plaintiff's Motion [#115] and orders Defendant to supplement its response to Interrogatory No. 11, to the extent this interrogatory and its subparts do not exceed the allotted number.

Finally, the Court addresses Defendant's objection to the extent this interrogatory seeks documents that are protected by the attorney-client privilege and work product. *See Pl.'s Ex. I, Def.'s Resps. & Objs. to Pl.'s Second Set of Interrogs.* [#115-9], No. 11. While design-around product development often occurs in consultation with counsel and arguably in anticipation of litigation, courts "routinely allow discovery into design around" because "this type of discovery seeks to learn things the company has done or plans that it has made, and facts are not protected by the work product doctrine." *Illumina, Inc. v. BGI Genomics Co.*, No. 20-cv-01465-WHO (TSH), 2020 WL 7047708, at *3 (N.D. Cal. Dec. 1, 2020) (internal citations, quotation, and modification omitted). Nevertheless, Plaintiff does not get carte blanche to obtain all design-around discovery.  Attorney-client

---

[8] Due to the commercially sensitive information contained in Exhibit K, it is filed under Level 1 restriction. Nevertheless, the Court has no reason to believe that its limited quotation from Exhibit K divulges commercially sensitive information.

privilege and work product protections still apply to attorney-client communications and attorney-written documents containing an attorney's mental impressions, opinions, and strategies. *Id.* But documents subject to work product protection may still be discoverable if they are otherwise discoverable under Federal Rule of Civil Procedure 26(b)(1) and the requesting party has demonstrated a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A).

Because the parties' written and oral arguments did not delve into the substantial need analysis and Defendant has not identified any particular documents that are subject to privilege or work product protection, the Court concludes that this issue is not ripe and the Court refrains from engaging in that analysis at this time.

### *Interrogatory No. 13*

Interrogatory No. 13 seeks the following information for the accused OTTZ product and the unaccused XFO product: (1) a description of the design and development process and identification of milestone dates from the conception date through the first shipment date; and (2) identification of each person involved in and responsible for: (a) the design, development and testing, (b) manufacture, (c) sale, and (d) shipment. Although this interrogatory contains multiple factually discrete subparts, Defendant did not object on that ground; therefore, the Court does not consider that issue.

However, Defendant objects to this interrogatory as overbroad because it "seeks the 'design and development process' for every XFO product, without restriction to time frame, to features actually at issue, or to any design-around efforts directed at the '070 Patent," and "[i]t encompasses the full history of all XFO development and engineering—

including topics having nothing to do with a balun, an alleged design-around, or any claim or defense in this case." *Response* [#12] at 16.

In reply, Plaintiff does not address Defendant's overbreadth objection; rather, Plaintiff reiterates that this interrogatory is "relevant to [Defendant's] willfulness inquiry." *Reply* [#137] at 10-11.

Given Defendant's objection that this interrogatory encompasses XFO products that may not include features in Plaintiff's patent or XFO products that are the result of design around efforts, the Court declines to order a supplemental response at this time. Instead, Plaintiff shall amend Interrogatory No. 13 to narrow it to the relevant universe of XFO products as determined from the information contained in Defendant's forthcoming supplemental response to Interrogatory No. 11.

Accordingly, Plaintiff's Motion [#115] is **denied** to the extent it seeks to compel a supplemental response to Interrogatory No. 13.

### *Interrogatory No. 14*

Interrogatory No. 14 seeks the following information for the accused OTTZ product and the unaccused XFO product: (1) identification (by model number) and description (of similarities and differences) of any of Plaintiff's products that Defendant considers a competing product; and (2) a description of comparative analyses Defendant uses to market the benefits of its products in comparison to Plaintiff's competing product. In briefing, Plaintiff explains that this interrogatory "asks [Defendant] to identify which of [Plaintiff's] multitap products compete with its OTTZ and XFO products." *Motion* [#115] at 17. Plaintiff asserts that this information "is relevant to damages, including lost profits from [Plaintiff's] lost sales and to a reasonable royalty determination[.]" *Id*. at 17-18.

Defendant disagrees that this interrogatory is relevant to the design around issue, and it objects on grounds that "[t]his sweeping inquiry would require competitive market analysis and product-by-product comparisons untethered to the asserted claims or defenses, and it encompasses vast categories of information well beyond the narrow relevance [Plaintiff] describes." *Response* [#132] at 16-17.

In reply, Plaintiff states,

> If Technetix identifies an ATX product covered by the '070 Patent as a competitor to Technetix's OTTZ and/or XFO multitaps, then those product sales are directly relevant to establishing, for example, (a) damages via a reasonable royalty (if the products infringe), or (b) design around (to the extent Technetix removed the balun component from the competing device)—both categories are relevant to ATX's case-in-chief.

*Reply* [#137] at 11.

Plaintiff's reply highlights this interrogatory's overbreadth. Plaintiff wants Defendant to identify all products that compete with Plaintiff's product—regardless of whether a competing product contains the claimed elements of the '070 Patent. But Plaintiff does not stop there. Plaintiff also wants Defendant to compare and contrast the features and benefits, and the similarities and differences, of Plaintiff's product and Defendant's competing product—again under the assumption that the competing product necessarily contains the claimed elements of the '070 Patent. By its very nature, this request encompasses information that is not relevant to Plaintiff's claims and seeks far more information than is needed to resolve the issues in this litigation. *See* FED. R. CIV. P. 26(b)(1). This smells like a fishing expedition.

Accordingly, Plaintiff's Motion [#115] is **denied** to the extent it seeks a supplemental response to Interrogatory No. 14.

### *Interrogatory No. 15*

Interrogatory No. 15 asks Defendant to identify and describe all past, current, and future product developments that are designed to avoid infringement of the '070 Patent. The interrogatory further seeks identification of specific design features that avoid patent infringement, the date of development, identification of all relevant documentation, and identification of each individual involved in the design, development, or marketing of the identified product, and the intended market for each product.

Though Defendant objects on grounds that this interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case, it responded by stating that "the products accused of infringement were not necessarily designed to avoid infringing the patent-in-suit, but rather their designs were confirmed not to infringe the patent-in-suit during the course of development." *Def.'s Response to Interrog. 15*.

In reply, Plaintiff argues that Defendant has improperly limited its response to only the products accused of infringement; namely, the OTTX multitaps. *Reply* [#137] at 12. Plaintiff asks the Court to order Defendant to supplement its response to include "all XFO multitaps (i.e., about 24 variations for the Motorola-compatible XFO multitap models and about 48 for the Regal-compatible XFO multitap models)." *Id*. (emphasis omitted).

Because the Court has concluded that Plaintiff has demonstrated reasonable similarity between the accused OTTZ product and the unaccused XFO product, and because design-around efforts are relevant to the issues of willful infringement, damages, and invalidity, the Court **grants** Plaintiff's Motion [#115]. Defendant is ordered to supplement its response to Interrogatory No. 15 to include the unaccused XFO product.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Compel [#115] is **GRANTED in part and DENIED in part**.

IT IS FURTHER **ORDERED** that Defendant shall supplement its responses to Requests for Admission Nos. 1 through 3 and Interrogatories Nos. 11 and 15 consistent with this Order.

IT IS FURTHER **ORDERED** that Defendant supplement its responses **by April 8, 2026**.

Dated: March 6, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge